J-S26016-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.S.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.C., FATHER | : | No. 106 EDA 2019 |

Appeal from the Order Entered December 7, 2018
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-AP-0000913-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: A.S.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.C., FATHER | : | No. 107 EDA 2019 |

Appeal from the Order Entered December 7, 2018
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-DP-0001715-2017

BEFORE:  PANELLA, P.J., GANTMAN, P.J.E., and PELLEGRINI*, J.

MEMORANDUM BY GANTMAN, P.J.E.:              **FILED MAY 29, 2019**

Appellant, C.C. ("Father"), appeals from the orders entered in the Philadelphia County Court of Common Pleas, which granted the petition of the Philadelphia County Department of Human Services ("DHS") for involuntary termination of Father's parental rights to his minor child, A.S.L. ("Child"), and changed Child's permanency goal to adoption.  We affirm and grant counsel's

_____
*   Retired Senior Judge assigned to the Superior Court.

petition to withdraw.

The relevant facts and procedural history of this case are as follows. Father and A.L.L. ("Mother") are the natural parents of Child. Mother has two additional minor children, D.L. and A.L., who, together with Child, resided with Mother. Father is not D.L. or A.L.'s biological father, and Father did not reside with Mother, Child, D.L., and A.L.

On February 2, 2017, DHS received a General Protective Services ("GPS") report alleging Child had head lice and had not attended school since January 3, 2017. The report additionally stated Child had fine motor skill and visual issues and should undergo psychoeducational analysis. On March 10, 2017, DHS received a second GPS report, alleging that several drug-related incidents occurred at Mother's home, which put Child and D.L. in danger, and Mother continued to use drugs. The report also stated Child continued to miss school.

DHS filed a dependency petition for Child on June 29, 2017, and the court appointed a guardian *ad litem* for Child. On July 14, 2017, the court adjudicated Child dependent. Following a permanency review hearing on September 28, 2017, the court ordered DHS to retain legal custody of Child, set Child's placement goal as reunification, and granted Mother and Father supervised visitation. The court held additional permanency review hearings on December 14, 2017, and March 15, 2018, and made no significant changes to custody or visitation. Following the March 15, 2018 hearing, however, the

court noted Father had minimally complied with the permanency plan and was discharged from the Achieving Reunification Center for lack of participation.

On September 24, 2018, the court appointed a child advocate for Child. DHS filed petitions on November 14, 2018, to terminate parents' parental rights and to change Child's permanency goal to adoption. After a hearing on December 7, 2018, the court granted DHS' petitions. Father filed timely *pro se* notices of appeal as to Child at each relevant docket number (AP-0000913-2018 and DP-0001715-2017), even though Father still had counsel of record.[1] Father did not file a contemporaneous statement of errors complained of on appeal per Pa.R.A.P. 1925.

This Court consolidated Father's appeals *sua sponte* on January 11, 2019, and ordered Father's counsel to file a Rule 1925 statement by January 22, 2019. On January 28, 2019, this Court entered an order noting Father's counsel had failed to comply with the January 11, 2019 order and remanding the case for the trial court to determine if counsel had abandoned Father. On the same day, Father's counsel filed in the trial court a Rule 1925(c)(4) statement of intent to file an **Anders**[2] brief. On January 30, 2019, this Court

_____

[1] Mother is not a party to this appeal.

[2] **Anders v. California**, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). The **Anders** procedure, whereby appointed counsel seeks to withdraw from representation, has been applied since 1992, to cases involving the termination of parental rights. **See In re V.E.**, 611 A.2d 1267, 1275 (Pa.Super. 1992). This Court extended the **Anders** procedure to appeals from

issued a rule to show cause why this Court should not dismiss Father's appeals for counsel's failure to comply with the January 11, 2019 order. Counsel filed a response to the show cause order on February 11, 2019, and on February 21, 2019, this Court discharged the show cause order and referred the matter to the merits panel. On March 17, 2019, counsel filed an application to withdraw and an **Anders** brief in this Court.

As a preliminary matter, counsel seeks to withdraw her representation pursuant to **Anders, supra** and **Commonwealth v. Santiago**, 602 Pa. 159, 978 A.2d 349 (2009). **Anders** and **Santiago** require counsel to: (1) petition the Court for leave to withdraw, certifying that after a thorough review of the record, counsel has concluded the issues to be raised are wholly frivolous; (2) file a brief referring to anything in the record that might arguably support the appeal; and (3) furnish a copy of the brief to the appellant and advise him of his right to obtain new counsel or file a *pro se* brief to raise any additional points the appellant deems worthy of review. **Santiago, supra** at 173-79, 978 A.2d at 358-61. Substantial compliance with these requirements is sufficient. **Commonwealth v. Wrecks**, 934 A.2d 1287, 1290 (Pa.Super. 2007). After establishing that counsel has met the antecedent requirements

---

goal change orders, as long as the appellant was also appealing from an involuntary termination decree. **See In re J.D.H.**, 171 A.3d 903, 905-06 (Pa.Super. 2017) (extending **Anders** procedure for withdrawal of representation to cases involving goal change orders, even without any accompanying involuntary termination orders).

- 4 -

to withdraw, this Court makes an independent review of the record to confirm that the appeal is wholly frivolous. **Commonwealth v. Palm**, 903 A.2d 1244, 1246 (Pa.Super. 2006). **See also Commonwealth v. Dempster**, 187 A.3d 266 (Pa.Super. 2018) (*en banc*).

In **Santiago, supra**, our Supreme Court addressed the briefing requirements where court-appointed appellate counsel seeks to withdraw representation:

> Neither **Anders** nor [**Commonwealth v. McClendon**, 495 Pa. 467, 434 A.2d 1185 (1981)] requires that counsel's brief provide an argument of any sort, let alone the type of argument that counsel develops in a merits brief. To repeat, what the brief must provide under **Anders** are references to anything in the record that might arguably support the appeal.
>
> \*   \*   \*
>
> Under **Anders**, the right to counsel is vindicated by counsel's examination and assessment of the record and counsel's references to anything in the record that arguably supports the appeal.

**Santiago, supra** at 176, 177, 978 A.2d at 359, 360. Thus, the Court held:

> [I]n the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Id.** at 178-79, 978 A.2d at 361.

Instantly, Father's counsel has filed a petition to withdraw. The petition states counsel conducted a conscientious review of the record and determined the appeal is wholly frivolous. Counsel also supplied Father with a copy of the brief and a letter explaining Father's right to retain new counsel or to proceed *pro se* to raise any additional issues Father deems worthy of this Court's attention. In the **Anders** brief, counsel provides a summary of the facts and procedural history of the case. Counsel refers to relevant law that applies to Father's issues. Counsel further states the reasons for the conclusion that the appeal is wholly frivolous. Therefore, counsel has substantially complied with the technical requirements of **Anders** and **Santiago**.

Father has not responded to the **Anders** brief *pro se* or with newly-retained private counsel. Counsel raises the following issues on Father's behalf:

> WHETHER THERE IS NO NON-FRIVOLOUS ISSUE REGARDING THE TERMINATION OF FATHER'S PARENTAL RIGHTS?
>
> WHETHER THERE IS NO NON-FRIVOLOUS ISSUE REGARDING CHANGING THE GOAL TO ADOPTION IN THIS MATTER?

(**Anders** brief at 4).

Appellate review of termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to

the effect of such a decree on the welfare of the child."

***In re Z.P.***, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting ***In re I.J.***, 972

A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> ***In re B.L.W.***, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).
>
> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by the finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> ***In re Adoption of A.C.H.***, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. ***In re J.D.W.M.***, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. ***In re C.S.***, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. ***In re R.L.T.M.***, 860 A.2d 190, 191-92 (Pa.Super. 2004).

***In re Z.P., supra*** at 1115-16 (quoting ***In re Adoption of K.J.***, 936 A.2d

1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165

(2008)).

DHS filed a petition for the involuntary termination of Father's parental rights to Child on the following grounds:

**§ 2511.  Grounds for involuntary termination**

**(a)  General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2)  The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5)  The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8)  The child has been removed from the care of the

parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P., supra* at 1117.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his… parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

Termination under Section 2511(a)(1) involves the following:

> To satisfy the requirements of [S]ection 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,
>
>> Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.
>
> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his… conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted). Regarding the six-month period prior to filing the termination petition:

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his… parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

The grounds for termination of parental rights under Section

2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Id.* at 340. The fundamental test in termination of parental rights under Section 2511(a)(2) was long ago stated in the case of *In re Geiger*, 459 Pa. 636, 331 A.2d 172 (1975), where the Pennsylvania Supreme Court announced that under what is now Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In Interest of Lilley*, 719 A.2d 327, 330 (Pa.Super. 1998).

"Termination of parental rights under Section 2511(a)(5) requires that: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Z.P., supra* at 1118.

"[T]o terminate parental rights under Section 2511(a)(8), the following factors must be demonstrated: (1) [t]he child has been removed from

- 11 -

parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa.Super. 2003). "Section 2511(a)(8) sets a 12–month time frame for a parent to remedy the conditions that led to the children's removal by the court." *In re A.R.*, 837 A.2d 560, 564 (Pa.Super. 2003). Once the 12–month period has been established, the court must next determine whether the conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of DHS supplied over a realistic time. *Id.* Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of DHS services. *In re Adoption of T.B.B.*, 835 A.2d 387, 396 (Pa.Super. 2003); *In re Adoption of M.E.P., supra*.

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." *Id.* Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether

termination would destroy an existing, necessary and beneficial relationship.

When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

*In re Z.P., supra* at 1121 (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and have his… rights terminated." *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa.Super. 2001). This Court has said:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this [C]ourt has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship

to the best of his… ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with …her physical and emotional needs.

*In re B.,N.M., supra* at 855 (internal citations omitted). "[A] parent's basic constitutional right to the custody and rearing of his… child is converted, upon the failure to fulfill his… parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *Id.* at 856.

On appeal, goal change decisions are subject to an abuse of discretion standard of review. *In re N.C.,* 909 A.2d 818, 822 (Pa.Super. 2006).

> In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was "manifestly unreasonable," that the court did not apply the law, or that the court's action was "a result of partiality, prejudice, bias or ill will," as shown by the record. We are bound by the trial court's findings of fact that have support in the record. The trial court, not the appellate court, is charged with the responsibilities of evaluating credibility of the witnesses and resolving any conflicts in the testimony. In carrying out these responsibilities, the trial court is free to believe all, part, or none of the evidence. When the trial court's findings are supported by competent evidence of record, we will affirm, "even if the record could also support an opposite result."

*Id.* at 822-23 (internal citations omitted).

The Juvenile Act controls the disposition of dependent children. *In re*

*R.P.*, 957 A.2d 1205, 1217 (Pa.Super. 2008). Section 6351 provides in relevant part:

**§ 6351.  Disposition of dependent child**

\* \* \*

**(f)  Matters to be determined at permanency hearing.**—At each permanency hearing, a court shall determine all of the following:

(1)  The continuing necessity for and appropriateness of the placement.

(2)  The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

(3)  The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4)  The appropriateness and feasibility of the current placement goal for the child.

(5)  The likely date by which the placement goal for the child might be achieved.

(5.1)  Whether reasonable efforts were made to finalize the permanency plan in effect.

(6)  Whether the child is safe.

\* \* \*

(9)  If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the

county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:

(i) the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;

(ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or

(iii) the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.

\* \* \*

**(f.1) Additional determination.**—Based upon the determinations made under subsection (f) and all relevant evidence presented at the hearing, the court shall determine one of the following:

(1) If and when the child will be returned to the child's parent, guardian or custodian in cases where the return of the child is best suited to the safety, protection and physical, mental and moral welfare of the child.

(2) If and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(3) If and when the child will be placed with a legal custodian in cases where the return to the child's parent, guardian or custodian or being

placed for adoption is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(4)     If and when the child will be placed with a fit and willing relative in cases where return to the child's parent, guardian or custodian, being placed for adoption or being placed with a legal custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

\* \* \*

**(f.2) Evidence.**—Evidence of conduct by the parent that places the health, safety or welfare of the child at risk, including evidence of the use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk, shall be presented to the court by the county agency or any other party at any disposition or permanency hearing whether or not the conduct was the basis for the determination of dependency.

**(g)   Court   order.**—On   the   basis   of   the determination made under subsection (f.1), the court shall   order   the   continuation,   modification   or termination of placement or other disposition which is best suited to the safety, protection and physical, mental and moral welfare of the child.

42 Pa.C.S.A. § 6351(f), (f.1), (f.2), (g).

"When the child welfare agency has made reasonable efforts to return a [dependent] child to [the child's] biological parent, but those efforts have failed, then the agency must redirect its efforts towards placing the child in an adoptive home." **In re N.C., supra** at 823 (citing **In re G.P.-R.**, 851 A.2d 967, 973 (Pa.Super. 2004)).

Although the agency has the burden to show a goal change

would serve the child's best interests, "[s]afety, permanency, and well-being of the child must take precedence over **all** other considerations" under Section 6351. ***In re D.P.***, 972 A.2d 1221, 1227 (Pa.Super. 2009), *appeal denied*, 601 Pa. 702, 973 A.2d 1007 (2009) (emphasis in original); ***In re S.B.***, 943 A.2d 973, 978 (Pa.Super. 2008), *appeal denied*, 598 Pa. 782, 959 A.2d 320 (2008). "[T]he parent's rights are secondary" in a goal change proceeding. ***In re D.P., supra***.

Because the focus is on the child's best interests, a goal change to adoption might be appropriate, even when a parent substantially complies with a reunification plan. ***In re N.C., supra*** at 826-27. Where a parent's "skills, including [his] judgment with regard to the emotional well-being of [his] children, remain problematic[,]" a goal change to adoption might be appropriate, regardless of the parent's compliance with a permanency plan. ***Id.*** at 825. The agency is not required to offer services indefinitely, where a parent is unable to properly apply the instruction provided. ***In re A.L.D.,*** [**supra** at 340]. ***See also In re S.B., supra*** at 981 (giving priority to child's safety and stability, despite parent's substantial compliance with permanency plan); ***In re A.P.***, 728 A.2d 375, 379 (Pa.Super. 1999), *appeal denied*, 560 Pa. 693, 743 A.2d 912 (1999) (holding where, despite willingness, parent cannot meet "irreducible minimum parental responsibilities, the needs of the child must prevail over the rights of the parent"). Thus, even where the parent makes earnest efforts, the "court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." ***In re Adoption of R.J.S.***, 901 A.2d 502, 513 (Pa.Super. 2006).

***In re R.M.G.***, 997 A.2d 339, 347 (Pa.Super. 2010), *appeal denied*, 608 Pa. 648, 12 A.3d 372 (2010) (some internal citations and quotation marks omitted).

After a thorough review of the record, the brief of the parties, the applicable law, and the well-reasoned opinion of the Honorable Vincent

Furlong, we conclude Father's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (**See** Trial Court Opinion, filed February 15, 2019, at 3-8) (finding: record demonstrated Father's ongoing inability to provide care for Child, due to Father's failure to remedy conditions, which brought Child into DHS' care; at termination hearing, case manager testified Child came into care due to truancy, medical neglect, and poor condition of home; case manager noted Father failed to achieve his SCP objectives; specifically, Father did not enroll in drug treatment program until November 20, 2018, after DHS had filed underlying petition to terminate parental rights; additionally, Father tested positive for amphetamines, PCP, and cannabis during pendency of termination proceedings; case manager also testified she observed Father under influence during visitation with Child; case manager added Father was somewhat bonded with Child, but that Child had not ever lived with Father, and Father had not provided Child with financial support or physical care; case manager opined Child's pre-adoptive parent, Child's grandmother, met all Child's needs and that Child wanted to be adopted; case manager explained termination of Father's parental rights would be in Child's best interest and would not cause Child irreparable harm; Child's counsel confirmed she spoke to Child about adoption, and Child said she wished to be adopted; court found case manager and Child's counsel credible). Following our independent review of the record, we agree with counsel that the appeal is frivolous. **See Dempster, supra**.

Accordingly, we affirm on the basis of the trial court's opinion and grant counsel's petition to withdraw.

Orders affirmed; counsel's petition to withdraw is granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/29/19